UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER D. C.[1] , | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CASE NO. 3:21-CV-182-MGG |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
|    Defendant. | ) |

**OPINION AND ORDER**

Christopher C. ("Mr. C)") seeks judicial review of the Social Security Commissioner's decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Act. This Court may enter a ruling in this matter based on parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). For the reasons discussed below, the Court **REMANDS** the decision of the Commissioner of the Social Security Administration ("SSA").

**OVERVIEW OF THE CASE**

Mr. C applied for DIB on May 19, 2019. In his application, he alleged a disability onset date of January 31, 2018. Mr. C's application was denied initially on August 22, 2019, and upon reconsideration on December 23, 2019. Following a telephone hearing on September 14, 2020, the Administrative Law Judge ("ALJ") issued a decision on

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.

September 29, 2020, which affirmed the Social Security Administration's denial of benefits. The ALJ found that Mr. C suffers from the severe impairments of degenerative disc disease of the lumbar spine status-post L4-L5 discectomy, diabetes mellitus with neuropathy, and obesity. The ALJ found that none of Mr. C's severe impairments, nor any combination of her impairments, meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Further, the ALJ found that Mr. C has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with certain additional limitations. Mr. C has past relevant work as a correction officer, a bail bonding agent, an auto parts sales representative, and a surveillance-system monitor. In view of Mr. C's RFC, the ALJ found that Mr. C is able to perform his past relevant work as a bail bonding agent and surveillance system monitor. Based upon these findings, the ALJ denied Mr. C's claim for DIB.

**I.  DISABILITY STANDARD**

In order to qualify for DIB, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step inquiry in evaluating claims for DIB and SSI under the Act includes determinations as to: (1) whether the claimant is doing substantial gainful activity ("SGA"); (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the

Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her RFC; and (5) whether the claimant is capable of performing other work. 20 C.F.R. § 416.920. The claimant bears the burden of proof at every step except the fifth. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## II.  STANDARD OF REVIEW

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The deference for the ALJ's decision is lessened where the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in

3

the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must at least provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); see also *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007).

### III. ANALYSIS

Mr. C. argues that the ALJ erred in analyzing medical opinion evidence and in failing to properly consider Listing 1.04.

First, Mr. C. asserts that the ALJ erred in failing to properly evaluate the opinions of treating physician Dr. Kelly and consultative examiner Dr. Gupta. For claims filed after March 27, 2017, such as Mr. C's claim, the rules dictating how an ALJ is to weigh medical opinion evidence are set out in 20 C.F.R. § 404.1520c. The regulations require an ALJ to weight the medical opinion using several factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; and specialization. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors considered when analyzing a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ must "explain how [she] considered the supportability and consistency factors," but the ALJ is not required

4

to explain how she considered the other factors if they are not relevant to the decision. *Id*.

Dr. Gupta provided a consultative examination on August 14, 2019. [DE 16 at 810]. In his consultative examination, Dr. Gupta noted spinous and paraspinal tenderness in the lumbar region, restricted range of motion in the lumbar region with full range of motion in the lumbar, cervical, and thoracic region. [DE 16 at 812]. Mr. C. presented with numbness and pain, as well as signs of poor circulation and skin discoloration in both lower extremities. [DE 16 at 812]. Mr. C was able to stoop and squat with difficulty, walk heel to toe and tandemly with difficulty, and stand from a sitting position with difficulty. [DE 16 at 812]. Dr. Gupta opined that Mr. C could not perform "work related activities such as prolonged sitting, standing and walking due to lower back pain but [could] do work related activities such as lifting, carrying and handling objects due to pain." [DE 16 at 812]. The ALJ found Dr. Gupta's opinion to be vague and stated that it was not persuasive "because he did not define *prolonged* sitting, standing, or walking." [DE 16 at 27-28].

Dr. Kelly provided a medical opinion on September 1, 2020. [DE 16 at 801]. Dr. Kelly began treating Mr. C in February 2017. [DE 16 at 802]. Dr. Kelly opined that Mr. C could stand for 5 minutes at one time for a total of 1-1.5 hours in workday due to pain. [DE 16 at 801]. He opined that Mr. C could sit for 20 minutes at a time for a total of 3 hours in a workday due to pain, and that he must occasionally lay down for his hips and back. [DE 16 at 801]. He further opined that Mr. C. can lift and carry 5-10 pounds, and that his "pain is severe enough to be distracting to prevent ability to remember

5

tasks[,] and pain precludes sitting longer than 20 minutes." [DE 16 at 802]. Dr. Kelly noted that Mr. C suffers from numbness in his hands and feet, and that his pain is sometimes so severe that he needs help to the bathroom. [DE 16 at 802]. Dr. Kelly also noted positive straight leg raise tests and positive FABER tests. [DE 16 at 802]. The ALJ found that Dr. Kelly's treatment notes "fail to document most of the complaints he listed in the opinion." [DE 16 at 28]. The ALJ also found that any treatment for pain was conservative and noted that Dr. Kelly did not order any further testing or imaging to evaluate the etiology of his pain. [DE 16 at 28]. The ALJ found Dr. Kelly's opinion was not persuasive because it is not supported by or consistent with the evidence. [DE 16 at 28].

     The ALJ erred in failing to discuss how Dr. Kelly's opinion was supported by his own treatment notes, by the treatment notes of his nurse practitioner, and by other treatment notes and examinations. On June 3, 2019, Nurse Practitioner Melissa Wilson found that Mr. C appeared distressed and documented an abnormal 10g monofilament exam for right foot neuropathy with only slight sensation in the arch of his right foot. [DE 16 at 735]. In September 2019, Dr. Kelly noted pain in Mr. C's right shoulder lower back, and both hips. [DE 16 at 721]. Dr. Kelly further noted that he appeared uncomfortable, and that motion elicited lumbosacral spine pain. [DE 16 at 721]. Mr. C also had positive straight leg raising on both sides, positive FABERs test on both hips, diminished or absent knee jerk reflex in both knees, and diminished or absent left ankle jerk reflex. [DE 16 at 728-29]. In June 2020, Dr. Kelly noted that Mr. C had abnormal and diminished dorsalis pedis pulses and weak pulses bilaterally. [DE 16 at 756]. Dr. Kelly

6

further noted that Mr. C had no sensation at all in his right forefoot and decreased sensation on the rest of the foot, and decreased sensation in the left forefoot. [DE 16 at 756].

The ALJ's finding that Dr. Kelly's examination findings "were largely normal" simply ignores multiple treatment notes where Dr. Kelly or his nurse practitioner found significant sensory deficits, positive straight leg raise testing, positive FABER testing, pain with motion, edema, and joint stiffness. [DE 16 at 585, 603, 727-29, 737, 756, 788, 790-91]. This amounts to impermissible cherry-picking, which requires remand. *Denton v. Astrue*, 596, F.3d 419, 426 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014).

Moreover, Dr. Kelly's opinion was also supported by other medical evidence in the record. Dr. Gupta reported spinous and paraspinal tenderness in the lumbar spine along with restricted range of motion in the lumbar region. [DE 16 at 812]. Dr. Gupta also noted numbness and pain in the lower extremities, which was supported by signs of poor circulation, skin discoloration, and abnormal sensation to light touch and pin prick in both lower extremities. [DE 16 at 812]. Dr. Gupta further noted that Mr. C had difficulty with stooping, squatting, walking heel to toe, walking tandemly, and standing from a sitting position. [DE 16 at 812]. Physical therapy record from 2018 also support Dr. Kelly's opinions and findings. In October 2018, in multiple sessions, the therapist noted significant flexibility and lumbopelvic mobility restrictions, a "slow guarded waddle gait pattern, decreased trunk rotation and arm swing," hypomobility throughout the entire lumbar spine and mid to lower thoracic spine, significant soft

7

tissue restrictions at the lumbar paraspinals, glute, and piriformis. [DE 16 at 502, 504, 510, 512, 523]. In November 2018, Mr. C has positive straight leg raise testing on the right. [DE 16 at 547].

The ALJ failed to discuss how the medical evidence and opinions support Dr. Gupta's and Dr. Kelly's opinions. In addition, the ALJ fails to discuss Mr. C's physical therapy notes outside of finding that the therapist's opinion to be not persuasive. [DE 16 at 27]. The ALJ does not discuss the objective testing or the physical therapist's reports, which at least in part support both Dr. Gupta's and Dr. Kelly's opinions.

The ALJ repeatedly cherry-picked evidence throughout the decision and failed to acknowledge evidence that supports both Dr. Gupta's and Dr. Kelly's opinions. The ALJ noted that Mr. C's balance gait remained normal and unassisted. [DE 16 at 26]. The ALJ used multiple treatment notes indicating normal gait to support his findings that Mr. C's neuropathy is less limiting than alleged. While the ALJ is correct in noting that some treatment notes indicated normal gait, the ALJ disregarded other treatment notes indicating abnormal gait. The ALJ also failed to acknowledge documented difficulties within Mr. C's normal gait and ignored other objective medical evidence that supported Dr. Gupta's and Dr. Kelly's opinions regarding his pain and diminished sensation. Significantly, many of the treatment notes referenced by the ALJ that indicate normal gait include other medical evidence that supports the medical opinions and Mr. C's allegations.

Mr. C presented with abnormal gait throughout his physical therapy records. [DE 16 at 487, 491, 504, 512, 523]. Other records indicated normal gait, yet described

8

some limitations in his ambulation. At one exam, he was noted to display reduced range of motion in all planes of the spine, and he moved with a loss of normal lumbar rhythm. [DE 16 at 346]. In another treatment note, his gait was described as symmetric, but slow, and he was noted to have positive straight leg raise testing and a severely limited range of motion. [DE 16 at 352]. On a different date, his gait was again described as normal despite "severely limited" range of motion causing him intense back pain. [DE 16 at 362]. His podiatrist noted that his dorsalis pedis pulses were abnormal and diminished, he had pitting edema at both ankles, and monofilament wire testing showed decreased sensation of both the right and left foot. [DE 16 at 747-48]. Mr. C had positive straight-leg raise testing and positive FABER testing, and Dr. Kelly and his nurse practitioner also noted abnormal monofilament testing which showed neuropathy and diminished sensation in both feet, with sensation absent in parts of the right foot. [DE 16 at 352, 728-29, 737, 752]. Mr. C also showed absent or diminished knee jerk and ankle jerk reflexes, as well as diminished dorsalis pedis pulses throughout the record. [DE 16 at 729, 758, 791]. The ALJ also referenced Dr. Gupta's opinion, which also indicated normal gait. [DE 16 at 812]. However, the ALJ ignores that despite having a normal gait, Mr. C had difficulty stooping, squatting, walking heel to toe, walking tandemly, and standing from a seated position. [DE 16 at 812]. The ALJ also ignored Dr. Gupta's findings of restricted range of motion in the lumbar spine, signs of poor circulation in both extremities, and abnormal sensation to light touch and pin prick in the lower extremities. [DE 16 at 812].

The ALJ also indicates that the medical evidence "almost never references" Mr. C's back pain after December 2018. [DE 16 at 22]. The ALJ used this finding, in part, to dismiss Dr. Kelly's opinions related to Mr. C's pain. [DE 16 at 24]. This finding does not accurately reflect the medical record. As an initial matter, there is very little medical evidence after 2018 in total. All of the physical impairment medical records post-2018 are from Dr. Kelly's office and Dr. Gutpa's consultative examination. Those medical records do, however, support Mr. C's allegations of back pain. Mr. C's back pain was noted in Dr. Gupta's consultative examination in August 2019, where Mr. C presented with spinous and paraspinal tenderness and restricted range of motion in the lumbar region. [DE 16 at 812]. In September 2019, Dr. Kelly noted lumbosacral spine pain elicited by motion and positive straight leg raise testing on both sides. [DE 16 at 721]. Dr. Kelly was still prescribing pain two separate pain medications for Mr. C's low back pain throughout 2020. [DE 16 at 749, 766]. While there is not much in the medical record post 2018, Mr. C's back pain was documented well into 2020.

The ALJ also erred in analyzing Dr. Gupta's and Dr. Kelly's medical opinions by failing to properly consider his obesity. "[A]n ALJ should consider the effects of obesity together with the underlying impairments, even if the individual does not claim obesity as an impairment." *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006) When the ALJ finds the claimant's obesity to be a severe impairment, as the ALJ did here, the consideration of the effects of obesity in combination with other impairments is even more important. *See also Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). Once the ALJ makes a finding that a claimant's obesity is severe and "significantly limit's [his]

ability to engage in work activity," the ALJ is required to discuss "any functional limitations resulting from the obesity" when formulating the RFC assessment. SSR 02-01p. The Seventh Circuit has noted that obesity often exacerbates conditions such as degenerative disc disease, degenerative joint disease, and arthritis. *Barret v. Barnhart,* 355 F.3d 1065, 1068-69 (7th Cir. 2004); *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009); *Dogan v. Astrue*, 751 F.Supp.2d 1029, 1044 (N.D. Ind. June 3, 2010); *Barnes v. Colvin*, 80 F.Supp.3d 881, 893-94 (N.D. Ill. Feb. 23, 2015).

The ALJ provides a brief paragraph discussing Mr. C's obesity, wherein the ALJ indicates that he has "considered how weight affects his ability to perform routine movement and necessary physical activity within the work environment." [DE 16 at 25-26]. The ALJ also noted that obesity "is a risk factor" for other impairments, and that he has "considered any added or cumulative effects the claimant's obesity played on his ability to function, and to perform routine movement and necessary physical activity within the work environment." [DE 16 at 26]. The ALJ failed to properly explain how Mr. C's obesity affected the RFC determination or how he considered Mr. C's obesity with relation to his neuropathy and back pain. The ALJ's boilerplate statement asserting that he considered Mr. C's obesity and its effects on his other impairments is not an adequate explanation or discussion, as SSR 02-1p requires the ALJ's RFC determination to assess the effect a claimant's obesity has upon his ability to perform the requisite physical activity within a work environment. *See Parker v. Colvin,* 2016 WL 4435622, at *4 (N.D. Ind. 2016). "The combined effects of obesity with other impairments may be greater than might be expected without obesity," yet the ALJ failed to explain how Mr.

11

C's obesity did or did not exacerbate his pain. SSR 02-1p. In fact, the ALJ never stated whether Mr. C's obesity had any effect on his other limitations, including his back pain or neuropathy. This is in error, as "[i]f the ALJ thought that [the claimant's] obesity has not resulted in limitations on [his] ability to work, he should had explained how he reached that conclusion." *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012).

Although the ALJ erred in failing to fully consider Mr. C's obesity, this error can be harmless when an ALJ "specifically predicate[s] his decision upon the opinions of physicians who did discuss [his] weight." *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006). Here, however, the ALJ found every medical opinion related to Mr. C's physical impairments to be not persuasive. [DE 16 at 27-28]. More problematically, Mr. C's primary physician, Dr. Kelly, provided weight loss counseling and diabetic diet counseling, as well as encouraged daily exercise (including a fitness phone application) at every appointment, indicating that Mr. C's obesity was something he was concerned about. [DE 16 at 580, 587-88, 722-23, 736, 750, 752, 760, 768, 776-77, 785-86]. Therefore, the ALJ's error in failing to properly consider Mr. C's obesity is not harmless and requires remand. Proper consideration of Mr. C's obesity may alter the ALJ's analysis of the medical opinion evidence.

Mr. C makes other arguments regarding the medical opinions and the Listings analysis, but the Court need not discuss those other arguments at this time. The ALJ will have the opportunity to fully discuss and reevaluate the rest of Mr. C's allegations on remand. This is not to say that there are no other errors in the ALJ decision, but the

Court need not discuss them when errors are already present in the ALJ's analysis and discussion of Mr. C's obesity and the medical opinions.

**V.    CONCLUSION**

For the reasons stated above, the ALJ failed to support his decision finding Mr. C is not disabled with substantial evidence. See *Kastner v. Astrue,* 697 F.3d 642, 646 (7th Cir. 2012); *Scott,* 297 F.3d at 595. Accordingly, the Commissioner's decision is **REMANDED** for further consideration consistent with this opinion.

**SO ORDERED** this 25th day of January 2023.

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge